# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

Tamika Jones

        Plaintiff,

v.

City of Germantown, Judge Robert M. Brannon Jr., in his official capacity as Judge of Germantown Municipal Court and individually, Judge Kevin Patterson, in his official capacity as Judge of Germantown Municipal Court and individually, Judge Raymond Clift Jr., in his official capacity as former Judge of Germantown Municipal Court and individually, Taylor Cates, in his official capacity as Chief Prosecutor of Germantown Municipal Court and individually, Nicholas Pierotti, in his official capacity as Prosecutor of Germantown Municipal Court and individually, Billy Price, in his official capacity as Court Administrator of Germantown Municipal Court, Prosecutor Three, in his official capacity as Prosecutor of Germantown Municipal Court, Prosecutor Four, in his official capacity as Prosecutor of Germantown Municipal Court, Prosecutor Five, in his official capacity as Prosecutor of Germantown Municipal Court

        Defendants.

Civil Action No

JURY TRIAL
DEMANDED

CLASS ACTION

# COMPLAINT

Comes now the Plaintiff, Tamika Jones, by and through her attorney of record Ryan Wiley, and brings this Complaint against the City of Germantown, Robert M. Brannon Jr., in his official capacity as Judge of Germantown Municipal Court and individually, Kevin Patterson,

in his official capacity as Judge of Germantown Municipal Court and individually, Raymond Clift Jr., in his official capacity as former Judge of Germantown Municipal Court and individually, Taylor Cates, in his official capacity as Chief Prosecutor for Germantown Municipal Court and individually, Nicholas Pierotti, in his official capacity as Prosecutor for Germantown Municipal Court and individually, Billy Price, in his official capacity as Court Administrator for Germantown Municipal Court, Prosecutor Three, in his official capacity as Prosecutor of Germantown Municipal Court, Prosecutor Four, in his official capacity as Prosecutor of Germantown Municipal Court, Prosecutor Five, in his official capacity as Prosecutor of Germantown Municipal Court, and alleges, on knowledge and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages and injunctive relief filed pursuant to 42 U.S.C. § 1983 on behalf of Plaintiff and other similarly situated individuals to redress the significant and gross violation of their rights under the United States Constitution by the City of Germantown and those it employs to oversee and operate the City of Germantown Municipal Court. These violations were accomplished through schemes of constitutionally deficient and legally improper procedures used to collect money from individuals with criminal charges originating in the court. These schemes violated the Plaintiffs' rights under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution. The schemes were facilitated

by the denial of the right to counsel as contemplated under the Sixth Amendment to the U.S. Constitution. For some Plaintiffs, these schemes led to their arrest on invalid and improperly issued warrants, making their incarceration a violation of the Fourth Amendment to the U.S. Constitution.

2. Plaintiff seeks damages, injunctive relief, attorneys' fees, costs and such other and further relief as may appear just and proper.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 42 U.S.C. 1983.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Tamika Jones is an adult resident of Memphis, Tennessee and a citizen of the State of Tennessee.

6. The City of Germantown is a municipality incorporated under the laws of Tennessee. It operates a municipal court, hereafter referred to as Germantown Municipal Court or "GMC".

7. Robert M. Brannon Jr. is, upon information and belief, an adult resident citizen of the state of Tennessee. He was elected to the office

of Judge in the Germantown Municipal Court in 1998 and has held the office since that time.

8.  Kevin Patterson is, upon information and belief, an adult resident citizen of the state of Tennessee. He was appointed to the office of Judge in the Germantown Municipal Court in October of 2022 and has held the office since that time.

9.  Raymond Clift Jr. is, upon information and belief, an adult resident citizen of the state of Tennessee. He was elected to the office of Judge in the Germantown Municipal Court in 2006 and held that office until his retirement in October of 2022.

10. Taylor Cates is, upon information and belief, an adult resident citizen of the state of Tennessee. He began employment with the City of Germantown as a Prosecutor in Germantown Municipal Court in 2005 and currently serves as Chief Prosecutor.

11. Nicholas Peirotti is, upon information and belief, an adult resident citizen of the state of Tennessee. He began employment with the City of Germantown as a Prosecutor in Germantown Municipal Court in 2019 and currently serves in that role.

12. Billy Price is, upon information and belief, an adult resident citizen of the state of Tennessee. He began employment with Germantown Municipal Court as a City Court Clerk in December of 2009. He became Court Administrator in 2019 and currently serves in that role.

13. Prosecutor Three is, upon information and belief, an adult resident citizen of the state of Tennessee and currently employed by the City of Germantown as a Prosecutor in the Germantown Municipal Court.

14. Prosecutor Four is, upon information and belief, an adult resident citizen of the state of Tennessee and currently employed by the City of Germantown as a Prosecutor in the Germantown Municipal Court.

15. Prosecutor Five is, upon information and belief, an adult resident citizen of the state of Tennessee and currently employed by the City of Germantown as a Prosecutor in the Germantown Municipal Court.

## FACTS

16. At all times relevant herein, Defendants acted under color of law.

<u>AUTHORITY AND DUTIES</u>

<u>OF TENNESSEE MUNICIPAL COURT ACTORS</u>

17. Tennessee law authorizes certain municipal courts to exercise concurrent jurisdiction with the general sessions courts. *Tenn. Code. Ann.* § 16-18-302(c).

18. Tennessee courts of general sessions are vested with jurisdiction to handle civil and criminal cases. *Tenn. Code. Ann.* § 16-15-501.

19. The duty to prosecute state criminal cases in a Tennessee municipal court lies with the District Attorney, provided that the municipality provides personnel for the purpose. *Tenn. Code. Ann.* § 8-7-103.

20. The Tennessee Rules of Criminal Procedure govern the procedure for the institution of criminal proceedings and the assignment of counsel in courts exercising the jurisdiction of a general sessions court. *Tenn. R. Crim. P.* Rule 1(b).

21. In Tennessee criminal proceedings, including in municipal courts exercising the jurisdiction of a general sessions court, every indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel. *Tenn. R. Crim. P.* Rule 44(a). See Advisory Commission Comment.

22. The waiver of counsel described in the preceding paragraph shall be in writing and placed in the record. Before accepting a waiver of counsel, the court shall advise the accused in open court of the right to the aid of counsel at every stage of the proceedings; and determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters. *Tenn. R. Crim. P.* Rule 44(b).

23. In cases in which an adult is charged with a felony or misdemeanor, a Tennessee court shall advise any party without counsel of the right to be represented throughout the case by counsel and that counsel will be appointed if the party is indigent and requests appointment of counsel. *TN R S CT* Rule 13(d)(1).

24. For the purpose of determining whether counsel will be appointed, an indigent person under Tennessee law is one who does not possess compensation for the services of a competent attorney. *State v.*

*Gardner*, 626 S.W.2d 721, 723 (Tenn. Crim. App. 1981); *State v. Henry*, 733 S.W.2d 127 (Tenn. Crim. App. 1987); *Tenn. Code Ann.* § 40-14-201.

25. A prosecutor in Tennessee shall make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel. *TN R S CT* Rule 8, *RPC* 3.8.

26. The judgment in a Tennessee criminal case becomes final thirty days after entry. *Tenn. R. App. P.* 4(c); *State v. Green*, 106 S.W.3d 646, 648–49 (Tenn. 2003); *State v. Peele*, 58 S.W.3d 701, 704 (Tenn. 2001).

27. If a fine is required as part of a Tennessee criminal judgment, the court may inquire about the failure to pay and if due to indigency adjust or if due to willful failure to pay a sentence up to 30 days. *Tenn. Code. Ann.* § 40-24-104(a).

28. Fines, costs and taxes related to a criminal judgment in Tennessee may otherwise only be collected in the same way as a civil judgment. No one shall be imprisoned for default of payment of costs and taxes. *Tenn. Code. Ann.* § 40-24-105(a).

29. Tennessee courts are authorized within their jurisdiction to issue warrants of arrest for the apprehension of persons charged with public offenses. *Tenn. Code. Ann.* § 40-6-202.

30. A valid warrant requires that the affidavit of complaint that accompanies the warrant allege the essential facts constituting the offense charged and that those facts be sufficient to show probable cause for the offense. *Tenn. R. Crim. P.* Rule 3(c), Rule 4. See *Tenn. Code Ann.* § 40-6-205.

31. Failure to appear in a Tennessee criminal case is a criminal offense and is classified as a misdemeanor. A person commits this offense if they fail to appear as directed by a lawful authority once criminal proceedings are initiated against the defendant. *Tenn. Code. Ann.* § 39-16-609 (hereafter called TN FTA).

GERMANTOWN MUNICIPAL COURT

GENERAL INFORMATION

32. The City of Germantown operates a municipal court, Germantown Municipal Court (hereafter called "GMC"), exercising concurrent jurisdiction with the general sessions courts for criminal cases filed in GMC and related to offenses occurring within the municipality. Throughout this complaint, any references to the GMC clerk staff are to Billy Price, the Court Administrator, or his staff.

33. GMC is located within Germantown City Hall at 1930 South Germantown Road, Germantown, TN 38138.

34. GMC criminal docket is scheduled on Wednesday nights starting at 6 PM.

35. Per the GMC website, "Those attending Germantown Municipal Court are required to abide by these important court rules." The words "important court rules" are bold and link to a document listing court rules. The following is a court rule in GMC: "All court costs and fines are expected to be paid on your court date." See Exhibit A.

36. GMC has two elected judges who preside over the court on a rotating basis, with each judge generally sitting on the bench every other week.

37. Robert M. Brannon Jr., on the bench since 1998, has a duty to limit his judicial actions to the jurisdictional authority granted by to him under Tennessee law.

38. Kevin Patterson, on the bench since October of 2022, has a duty to limit his judicial actions to the jurisdictional authority granted to him under Tennessee law.

39. Raymond Clift, Jr., on the bench from 2006 until October of 2022, had a duty to limit his judicial actions to the jurisdictional authority granted to him under Tennessee law.

40. City of Germantown employs five part time attorneys (hereafter called GMC city prosecutors) to prosecute state criminal cases and municipal ordinances in GMC.

41. Pursuant to Tenn. Code. Ann. § 8-7-103(1), the Shelby County District Attorney grants authority to the GMC city prosecutors allowing them to prosecute charges limited to state criminal jurisdiction.

42. Taylor Cates is the chief prosecutor in GMC and has a duty to limit his actions to the jurisdictional authority granted by the Shelby County District Attorney under Tennessee law.

43. Nicholas Pierotti is a senior prosecutor in GMC and has a duty to limit his actions regarding criminal cases to the jurisdictional authority granted by the Shelby County District Attorney under Tennessee law.

44. GMC employs three (3) additional prosecutors who have a duty to limit their actions regarding criminal cases to the jurisdictional

authority granted by the Shelby County District Attorney under Tennessee law.

GERMANTOWN MUNICIPAL COURT - SCHEME ONE -

POST JUDGEMNET COLLECTION OF FINES, COSTS, AND TAXES

45. Upon disposition and entry of judgement in any criminal case, GMC orders the defendant whose case is being disposed of (hereafter referred to as "DD" or "disposed defendant") to appear at a later date for payment of fines, costs, and taxes (hereafter referred generally as "costs"), unless DD is able to make payment on the disposition court date.

46. If DD is represented by counsel on the case being disposed of, GMC city prosecutors and judges advise the attorney that the case is disposed, and that GMC does not have any expectation that the attorney will represent DD further.

GERMANTOWN MUNICIPAL COURT

THE COLLECTION PERIOD

47. On subsequent dates given by GMC to appear for payment, court personnel direct DD to speak with clerk staff regarding payment.

48. If DD is able to make payment in full, GMC will take no further action against DD.

49. If DD is able to make a partial payment and clerk staff deems the amount paid sufficient, the clerk staff gives DD another date to appear for payment.

50. If DD is unable to make a payment or clerk staff deems the partial payment DD offers to pay insufficient, clerk staff directs DD to wait and speak with a GMC city prosecutor.

51. If the GMC city prosecutor deems the partial payment sufficient or the reason for nonpayment acceptable, the GMC city prosecutor gives DD another date to appear for payment.

52. If the GMC city prosecutor deems the offer of partial payment insufficient or the reason for the nonpayment unacceptable, the GMC city prosecutor directs DD to wait and speak with the GMC judge presiding at that setting.

53. The presiding GMC judge will give DD a future date to appear for payment.

54. Upon repeated failures to make acceptable payments, the GMC judges may advise DD that failure to bring payment as agreed will result in incarceration.

55. The GMC clerk assesses additional court costs of at least $25 for every date GMC gives DD to appear for payment.

56. If DD ever misses a date given by GMC to appear for payment, GMC issues a warrant for failure to appear under TN FTA.

57. GMC submits information about the warrant issued in the preceding paragraph to state and federal law enforcement databases.

58. If DD is arrested on the warrant for TN FTA described in paragraph 56, a GMC judge sets bond at an amount significantly higher than the amount owed and the GMC clerk adds a TN FTA charge to the record of the original TN DWLS case.

59. If DD is unable to post bond and a third party pays the balance before the court date, GMC will release DD and take no further action.

60. If DD comes to the GMC clerk's office prior to being arrested on the TN FTA warrant and is able to pay the balance, GMC will recall all warrants and take no further action.

61. If DD comes to the GMC clerk's office prior to being arrested on the TN FTA warrant and is able to pay some of the balance or a warrant fee, GMC will recall the warrants and give DD a future date to appear for payment.

62. If DD is unable to post bond and unable to arrange for a third party to bring payment, DD will remain in the Germantown Jail until the following Wednesday night court setting in GMC.

63. If DD remains in custody more than 72 hours, DD will be transported to one of the Shelby County Jail facilities at 201 Poplar or Jail East and remain there until bond is posted or the following Wednesday night court setting in GMC.

64. If DD remains in custody until the court date, GMC judges will release DD on their own recognizance and order AD to appear in GMC on a later date for payment.

65. GMC advises DD that costs must also be paid on the new TN FTA.

66. The GMC judges never advise DD of their right to counsel and never obtain a written waiver on any date given by GMC to appear for payment or any time during the collection period.

67. The GMC city prosecutors never advise DD of their right to counsel on any date given by GMC to appear for payment or any time during this process.

68. DD must endure this process indefinitely until the balance is paid.

GERMANTOWN MUNICIPAL COURT - SCHEME TWO -

OFFER TO AMEND MISDEMEANOR TO MUNICIPAL ORDINANCE

69. Operating a motor vehicle with a suspended, revoked, or canceled license in Tennessee is a state criminal offense classified as an A or B misdemeanor per *Tenn. Code Ann.* § 55-50-504. (Hereafter referred to as "TN DWLS")

70. Prosecution under TN DWLS is exclusively limited to state criminal jurisdiction. *Tenn. Code. Ann.* § 55-10-307(b)(3).

71. Municipalities in Tennessee may create municipal ordinances which mirror certain state criminal traffic offenses provided the offense mirrored is a C misdemeanor and the punishment does not exceed a $50 fine. *Tenn. Code. Ann.* § 16-18-302(a)(2).

72. Municipal courts in Tennessee municipalities with a population greater than 150,000 may also to enforce a municipal law or ordinance mirroring Tenn. Code Ann. § 55-50-301, the state criminal statue creating the offense of operating a motor vehicle without a valid driver license. *Tenn. Code. Ann.* § 16-18-302(b)(1).

73. Tenn. Code Ann. § 55-50-301(a)(1) reads, "No person, except those expressly exempted in this section, shall drive any motor vehicle upon a highway in this state unless the person has a valid driver license under this chapter for the type or class of vehicle being driven".

74. Section 20-111 in the City of Germantown Code of Ordinances (Hereafter "City No DL Ordinance"), reads "No person shall operate

any motor vehicle on any street without having in his possession an operator's license or a chauffeur's license valid under the laws of this state, or a valid license of his state of residence.", substantially mirroring Tenn. Code Ann. § 55-50-301.

75. The City of Germantown does not have a population greater than 150,000.

76. When a person is charged with TN DWLSRC in Germantown, either by citation or arrest, they are given a court date to appear. On that court date, court staff directs the accused defendant (hereafter "AD" to speak with a GMC city prosecutor.

77. The GMC city prosecutor makes an offer to AD. The offer is to amend the TN DWLSRC charge to the City No DL Ordinance with a judgement of a $50 fine plus court costs. This offer is contingent on the upfront payment of costs in an amount provided by the clerk.

78. If AD is able to pay the amount requested on the court date, the GMC city prosecutor enters a nolle prosequi (voluntary dismissal by the state) on all criminal counts. The GMC clerk records a judgement in the case record for the City No DL Ordinance showing the fine and costs paid.

79. If AD is unable to pay the amount requested on the court date, the GMC city prosecutor gives AD a date to appear for payment.

80. If AD is unable to pay the balance owed on the date GMC gives AD to appear for payment, GMC subjects AD to the procedures used against DD during the collection period, as outlined in paragraph 47 through 68 above, until the balance is paid.

81. Once the balance is paid, the GMC city prosecutor enters a nolle prosequi (voluntary dismissal by the state) on all criminal counts. The GMC clerk records a judgement in the case record for the City No DL Ordinance showing the fine and costs paid.

<u>GERMANTOWN MUNICIPAL COURT - SCHEME THREE -</u>

<u>USE OF MUNICIPAL FAILURE TO APPEAR ORDINANCE</u>

82. In some cases, GMC will amend a TN DWLSRC charge to the City No DL Ordinance prior to the upfront payment of costs. GMC then orders the defendant (hereafter referred to as "MD" or "municipal defendant" to return to court at a later date for payment.

83. If MD is represented by counsel on the case being disposed of, GMC city prosecutors and judges advise the attorney that the case is disposed, and that GMC does not have any expectation that the attorney will represent MD further.

84. If MD is unable to pay the balance owed on the date GMC orders MD to appear for payment, GMC subjects MD to the procedures used against DD during the collection period as outlined in paragraph 47 through 68, until the balance is paid.

85. If MD ever misses a date given by GMC to appear for payment, GMC issues a warrant for failure to appear under TN FTA.

86. If MD is ever arrested on the warrant described in the preceding paragraph, the charge name listed on the GMC docket is "City Failure to Appear" and the charging statute referenced is Section 20-42 of the Germantown Code of Ordinances.

87. Section 20-42 of the Germantown Code of Ordinances (hereafter called "City FTA") states "If the offender signs the agreement and waiver as provided in section 20-39 and then fails to appear for trial at the time and place designated, then the court shall immediately issue a warrant against the offender for the offense, and an additional warrant for the offense of violating the agreement to appear, and the warrant shall then be served upon the offender and the procedure followed as set out in section 20-41 regarding the service of warrants, booking the defendant, and taking appearance bail or committing to jail."

SHELBY COUNTY DISTRICT ATTORNEY POLICY ON TN DWLS

88. For at least the last five years, the Shelby County District Attorney has had a policy of declining to prosecute charges of TN DWLS filed in the Shelby County General Sessions Courts, unless the charge is associated with another criminal offense (such as drug possession), the suspension is related to a DUI or other active revocation, or in situations where the driver caused an accident. To decline prosecution, an assistant district attorney enters a nolle prosequi (voluntary dismissal by the state) with the general sessions court on the arraignment date.

89. For at least the last five years, the Shelby County District Attorney has had a policy of declining to indict charges of TN DWLS bound over to the Shelby County Criminal Courts from lower courts, unless the charge is associated with another criminal offense (such as drug possession), the suspension is related to a DUI or other active revocation, or in situations where the driver caused an accident.

90. On November 26, 2020, a City of Germantown police officer issued plaintiff Tamika Jones (hereafter "Ms. Jones") a misdemeanor citation for TN DWLSRC.

91. At her first court appearance on January 20, 2021, court staff directed Ms. Jones to speak with a GMC city prosecutor who gave her the date of February 17, 2021, to return with money to pay costs.

92. None of the GMC judges advised Ms. Jones of her right to counsel or obtained a written waiver of that right on January 20, 2021, or any date given by GMC to appear for payment.

93. None of the GMC city prosecutors advised Ms. Jones of her right to counsel on January 20, 2021, or any date given by GMC to appear for payment.

94. From the period of January 20, 2021, to August 16, 2023, using the procedures outlined in paragraph 69 through paragraph 81, GMC gave Ms. Jones over sixteen (16) dates to appear for payment. In paragraphs relating to Ms. Jones, this time shall be referred to as the "collection period".

95. On many of the dates GMC gave Ms. Jones to appear for payment, she had to stay for over 3 hours waiting to speak with the sitting GMC judge or one of the GMC city prosecutors.

96. On one of the dates GMC gave Ms. Jones to appear for payment, clerk staff advised Ms. Jones that she should not come to court with her nails and hair done and then expect the court to believe she could only pay $20 or that she was "indigent" for the purpose of getting appointed counsel. On several other dates given by GMC to appear

for payment, Ms. Jones endured similar comments from GMC staff regarding her appearance and clothing, as it related to her ability to pay the amounts GMC requested.

97. GMC clerk staff gave Ms. Jones less time between dates to appear for payment when she could only make small payments. Her alternative on those evenings was to continue waiting and to request a different date from a GMC prosecutor or the GMC judge presiding.

98. During the collection period, GMC submitted information to the Tennessee Department of Safety regarding these matters, which, until withdrawn, prevents Ms. Jones from obtaining a valid Tennessee driver's license.

99. During the collection period, Ms. Jones struggled with transportation due to her inability to obtain a valid driver's license.

100. During the collection period, Ms. Jones struggled to appear at every date GMC gave her for payment.

101. Ms. Jones is a single mother with two children of grade school age to whom she is the sole provider.

102. Ms. Jones had to arrange both transportation and childcare in order to make her appearances in GMC, often at her own expense, to avoid having a warrant issued.

103. During the collection period, and on some of the dates GMC gave her to appear for payment, Ms. Jones was not present, and GMC issued warrants for TN FTA.

104. During the collection period and following the issuance of warrants for TN FTA described in the preceding paragraph, Ms. Jones required assistance from family members or friends to pay GMC an

amount that would secure her release or cause GMC to recall the warrant.

105. During the collection period, Ms. Jones was arrested and incarcerated three times on the warrants GMC issued for TN FTA as described in paragraph 103.

106. Each time Ms. Jones was arrested as described in the preceding paragraph, the GMC clerk added TN FTA charges as additional counts under the original TN DWLS case record and reported information regarding these charges to state and federal law enforcement databases.

107. On two of the occasions described in paragraph 105, family members of Ms. Jones were able to post her bond through a bonding company.

108. On one of the occasions described in paragraph 105, Ms. Jones was unable to post bond and remained until the following Wednesday night.

109. On that date, a GMC judge released Ms. Jones on her own recognizance and gave her another date to appear for payment.

110. On October 26, 2021, a City of Germantown police officer arrested Ms. Jones for TN DWLSRC and for TN FTA under one of the warrants issued as part of this scheme. A GMC judge set bail for that matter, which her family posted through a bonding company.

111. When Ms. Jones appeared in GMC for both cases following her arrest on October 26, 2021, GMC followed the same procedure as with the first and gave Ms. Jones a date to appear for payment.

112. During the collection period, Ms. Jones made several requests to GMC that counsel be appointed and those requests were denied.

113. On August 16, 2023, Ms. Jones did not have a payment for GMC and waited to speak with Judge Patterson after speaking with GMC clerk staff and a GMC city prosecutor. In response to Judge Patterson's inquiry about her failure to make a payment, she advised him that she was unable to make a payment due to a recent health matter. She attempted to further explain her situation to the court, but Judge Patterson cut Ms. Jones off and gave her the date of September 20, 2023, to appear for payment. Judge Patterson advised Ms. Jones that if she did not make a sufficient payment by the date of September 2023, she was "going to jail".

114. On September 20, 2023, Ms. Jones appeared in GMC represented by undersigned counsel.

115. Ms. Jones and undersigned counsel executed a waiver of preliminary hearing on all her criminal matters pursuant to Tenn. R. Crim. P. Rule 5(c)(2)(b) and submitted it to Judge Patterson, requesting the matters be bound over to the Shelby County Criminal Court.

116. Judge Patterson accepted the waiver submitted in the preceding paragraph and signed a bind over order.

117. The legal effect of a bind over order entered pursuant to Tenn. R. Crim. P. Rule 5 is to remove jurisdiction from the lower court and vest jurisdiction in the state courts within the judicial district to await action by the grand jury. *Waugh v State*, 564 S.W.2d 654 (Tenn. 1978).

118. As of this filing, all the cases against Ms. Jones bound over from GMC are still pending action of the grand jury in the Shelby County Criminal Court.

119. During the collection period, Ms. Jones had the legal right to request that all of her cases be bound over, with the effect as described in paragraph 117.

120. During the collection period, GMC judges and prosecutors failed to advise Ms. Jones of her legal right to request that all of her cases be bound over.

121. During the collection period, Ms. Jones was indigent and unable to secure funds to retain counsel.

122. On numerous dates given to appear for payment during the collection period, Ms. Jones asked the GMC judges and city prosecutors about whether GMC could appoint counsel. All of her requests to GMC for that determination were denied.

123. During the collection period, GMC judges failed to appoint counsel to represent Ms. Jones or inquire about her ability to obtain counsel.

124. On September 20, 2023, prior to entry of the bind over order, Ms. Jones had a balance with GMC of $912.25.

125. As of September 20, 2023, prior to entry of the bind over order and during the collection period, Ms. Jones paid GMC at least $1000 mostly from money borrowed from family or friends.

126. As of September 20, 2023, prior to entry of the bind over order and during the Collection Period, Ms. Jones spent over ninety-six (96) hours in the City of Germantown jail related to the cases described herein.

## COUNT 1

### Violation of 42 U.S.C. § 1983

127. Plaintiff repeats and realleges paragraphs 16 through 126 hereof, as if fully set forth herein.

128. Defendants, in their above acts under color of law, used the authority and jurisdiction granted by state law without following the laws required of them in exercising said authority and jurisdiction. Many of those laws exist to embody core constitutional protections for indigent individuals who find themselves under the jurisdiction of the court.

129. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The fairness of the relations between the state and a criminal defendant is generally analyzed under the Due Process Clause. *Bearden v Georgia*, 461 U.S. 660 at 665 (1983).

130. At every stage, an individual Plaintiff's ability to pay determines how GMC treats them. Ability to pay determines how long a Plaintiff must wait each date given by GMC to appear for payment, because they are under threat of the TN FTA. Ability to pay determines how many dates GMC gives Plaintiff to appear before they are free from the process. Ability to pay determines whether Plaintiff can avoid incarceration if they ever miss a date given by GMC to appear for payment, and how long they must remain incarcerated should they be arrested on the TN FTA warrants issued by GMC.

131. The expectation by GMC of ability to pay is embodied in the GMC court rule stating "[a]ll court costs and fines are expected to be paid

on your court date". This rule stands in opposition to the constitutional duty required by Tennessee courts exercising jurisdiction over criminal cases to inquire about an individual's ability to pay before taking actions contrary to their liberty interests in a criminal proceeding. See *State v. Dye*, 715 S.W.2d 36 (Tenn. 1986) (citing *Bearden v Georgia*, 461 U.S. 660)

132. GMC is able to accomplish the schemes alleged within this Complaint by their actions denying Plaintiffs' rights under the Sixth Amendment. "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel."

133. Throughout the collection period, GMC ceases to follow the Tennessee Rules of Criminal Procedure, but specifically fails to abide by Tenn. R. Crim. P. 44 regarding the initial court appearance and advise of the right to counsel.

134. Plaintiffs, as individuals unable to pay the monies requested by GMC, are more likely to be indigent for the purpose of needing appointed counsel, but GMC judges never assess this need or appoint counsel in violation of the Plaintiffs' rights under the Sixth Amendment to the U.S. Constitution. See *Gideon v. Wainwright.* 83 S.Ct. 792 (1963).

135. The warrants issued by GMC for TN FTA are invalid and their execution constitute a warrantless seizure in violation of the Fourth Amendment to the U.S. Constitution. TN FTA contains no provision

that applies the statute to post disposition matters, municipal court cases, or dates given to appear for payment. GMC uses the authority of the jurisdiction granted by Tennessee state law to issue the TN FTA warrants against Plaintiffs and facilitate the schemes embodied in this Complaint.

136. The deprivation of Plaintiffs' constitutional rights under color of law by Defendants caused significant harm to the Plaintiffs' liberty and property rights. Plaintiffs are entitled to damages that were the result of this harm.

137. This deprivation of Plaintiffs' constitutional rights under color of law is ongoing. Defendants should be enjoined in the following manner:

A. GMC should be enjoined from any collection of monies until such time as it creates a constitutionally sufficient process for the collection of monies related to cases filed within its jurisdiction.

B. GMC should be enjoined and cease action on, or scheduling of, any proceedings related to collections, TN DWLS, TN FTA, or City FTA.

C. GMC should be enjoined from exercising concurrent jurisdiction with the general sessions courts over state criminal matters, until such a time as it can show constitutionally sufficient procedures for the assessment of indigency and the appointment of counsel, as required by state and federal law.

**WHEREFORE**, Plaintiff requests judgment as follows:

A. Damages

B. Reasonable attorneys' fees and costs.

C. Injunctive relief

D. Granting such other and further relief as may appear just and proper.

Dated: November 3rd, 2023

Memphis, Tennessee

Respectfully submitted,

By: /s Ryan Wiley

Ryan Wiley

Attorney for Plaintiff Tamika Jones

Bar Number: TN 27624

The Wiley Law Firm

(901) 305-3423

1355 Lynnfield Suite 245

Memphis, TN 38119

ryan@thewileylawfirm.com